840 So.2d 665 (2003)
Keith MASTERS and Rachael Diane Masters, Plaintiffs-Appellants,
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant-Appellee.
No. 36,735-CA.
Court of Appeal of Louisiana, Second Circuit.
March 5, 2003.
Rehearing Denied April 3, 2003.
*666 Peters, Ward, Bright & Hennessy, by: J. Patrick Hennessy, Shreveport, for Appellants.
Stone, Pigman, Walther, Wittman & Hutchinson, by: Wayne J. Lee, Casten & Pierce, by: Marshall R. Pearce, for Appellee.
Before WILLIAMS, DREW and HARRISON (Pro Tempore), JJ.
DREW, J.
Keith Masters and Rachael Diane Masters, plaintiffs, appealed the summary judgment dismissing their claim against their auto insurer, State Farm Automobile Insurance Company, for its proportionate share of attorney's fees and costs arising from State Farm's recovery of its medical payments to Mr. and Mrs. Masters from the responsible third party's insurer. Mr. and Mrs. Masters contended that the summary judgment in favor of State Farm, in essence, required their attorney to be an unpaid collection agent for State Farm. According to the insurer, Mr. and Mrs. Masters sought to force State Farm to pay for their attorney's fees for services which State Farm neither needed nor requested, when the insurer received no timely notice of retention of the attorney or his subsequent activities. For the following reasons, the judgment is affirmed.

FACTUAL AND PROCEDURAL BACKGROUND
In their action[1] filed November 16, 2000, Mr. and Mrs. Masters alleged:

*667  State Farm issued the Masterses an auto insurance policy containing the standard medical payments coverage.
 After Mrs. Masters was injured in an auto accident on December 27, 1999, State Farm paid her medical expenses.
 Plaintiffs retained an attorney on a contingent fee contract to recover their damages from the other driver.
 Under the terms of the policy, State Farm was subrogated to the extent of its medical payments to the plaintiffs' recovery against the other driver.
 State Farm did not hire an attorney but filed a notice of subrogation claim with the insurer of the third party.
 Plaintiffs' attorney reached a settlement with the insurer of the other driver, and Mr. and Mrs. Masters paid their portion of the attorney's fees.
 Plaintiffs' attorney demanded that State Farm pay its proportionate part of the attorney's fees and costs, and State Farm refused.
 Mr. and Mrs. Masters deposited with the trial court a check made payable to them and State Farm and sought to have the court order State Farm to endorse the check so it could be placed into the registry of the court.
Along with its answer, State Farm filed a number of affirmative defenses including: (1) the plaintiffs' claim was extinguished because State Farm had paid all the sums due plaintiffs under their policy; (2) the plaintiffs were not entitled, as a matter of law, to recover damages, penalties or attorney's fees; (3) neither plaintiffs nor their attorney gave timely notice to State Farm that plaintiffs were represented by an attorney; and (4) State Farm was not bound by the fee contract between Mr. and Mrs. Masters and their attorney, and alternatively, if State Farm were obligated (which State Farm denied), then the quantum must be reasonable. In its answer, State Farm contended that the medical expenses paid to Mrs. Masters exceeded the $2,670.52 alleged by plaintiffs. State Farm acknowledged that its personnel notified the third party's insurer of its subrogation claim and that State Farm did not retain an attorney to pursue the subrogation claim.
State Farm sought a summary judgment to dismiss with prejudice plaintiffs' action to compel State Farm to pay a portion of the attorney's fees the plaintiffs incurred in pursuing and settling their claim against the tortfeasor's insurer in the auto accident. As plaintiffs' insurer, State Farm paid Mrs. Masters' medical expenses and was subrogated to recover medical payments from the tortfeasor's insurer. According to State Farm, the uncontroverted facts were:
 Plaintiffs did not timely notify State Farm they had retained an attorney.
 Plaintiffs did not keep State Farm abreast of the attorney's actions.
 State Farm did not retain or rely on plaintiffs' lawyer but pursued its own subrogation claim.
Following a hearing, the trial court issued oral reasons for judgment in which the trial court noted:
 Following the December 27, 1999, accident, Mr. and Mrs. Masters informed State Farm in December 1999 that they intended to pursue a claim against the other driver and his insurer, Progressive Insurance Company. Plaintiffs did not indicate who their attorney was to be.

*668  On January 12, 2000, Mr. and Mrs. Masters hired attorney Pat Hennessy.
 On January 28, 2000, State Farm claims representative, Janet Sanders, sent a letter to Jennifer Minner with Progressive stating that the letter was notice to Progressive of State Farm's subrogation rights and requesting that Progressive contact State Farm.
 Jeff Ray of State Farm wrote Progressive again on June 2, 2000, and repeated that the letter was a notice of subrogation and a request for Progressive to contact State Farm.
 On June 22, 2000, plaintiffs informed State Farm by telephone that they had a lawyer.
 Mr. Hennessy first contacted State Farm on or about September 8, 2000, when he spoke with Jeffrey Ray, a State Farm subrogation agent. Plaintiffs' attorney asked that State Farm reduce its medical payment recovery by one-third in accord with the plaintiffs' contingency fee contract.
 This was the first formal contact between the plaintiffs' attorney and State Farm.
 At this time, Mr. Hennessy had already reached a settlement with Progressive, the third party's insurer.
 Except for Mrs. Masters' June phone call, there were no progress reports or any notice to State Farm.
 The first written contact was a September 12, 2000, letter from Mr. Hennessy to State Farm demanding payment of attorney's fees and costs.
 State Farm did not agree to the contingency arrangement, and suit was filed on November 16, 2000.
 The affidavit of Griff Williams explained that (1) the Medical Payment Subrogation Arbitration Agreement provided that participating insurers must arbitrate disputes regarding medical payments subrogation that do not exceed $100,000; and (2) State Farm arbitrated medical payment claims with other members of the Medical Payment Subrogation Arbitration Agreement with in-house staff.
 State Farm and Progressive were members of the Medical Payment Subrogation Arbitration Agreement.
 State Farm did not ask Mr. Hennessy to pursue its subrogation rights for medical payments.
 State Farm at all times intended to handle the subrogation claim with in-house personnel and did not intend to hire an attorney.
 The matter was settled by August 2000, well before prescription ran; there was still time for State Farm to arbitrate with Progressive.
 There was neither timely nor adequate notice from Mr. Hennessy to State Farm.
 Mr. Hennessy did not inform State Farm of the progress of the case and did not involve State Farm in settlement negotiations.
 State Farm was entitled to summary judgment as a matter of law.

DISCUSSION
Appellate review of the grant or denial of a motion for summary judgment is de novo. Green v. State Farm General Ins. Co., 35775 (La.App.2d Cir.4/23/2002), 835 So.2d 2, La. C.C.P. art. 966 provides that the plaintiff or defendant may move for a summary judgment in its favor for all or part of the relief for which it has prayed. The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of an action. The procedure is favored, and the trial court should construe it to accomplish the stated goals. Summary judgment *669 shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law. La. C.C.P. art. 966.
The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion does not require it to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that it will be able to satisfy its evidentiary burden of proof at trial, there is no genuine issue of material fact. La. C.C.P. art. 966; Green v. State Farm, supra.
Both Mr. and Mrs. Masters, as well as State Farm, cite Barreca v. Cobb, 95-1651 (La.2/28/96), 668 So.2d 1129, as authority for their opposing positions. Blue Cross paid $15,360.91 for medical expenses Barreca incurred when he was injured in an auto accident. Barreca sued the other driver, the owner of the car and both their insurers. Barreca's attorney wrote Blue Cross, notifying the insurer of the suit and informing Blue Cross that in the event of judgment or settlement, Barreca would obtain the portion due Blue Cross and forward the money to the insurer. Blue Cross choose not to intervene. The matter later settled for $69,000. Under the terms of Barreca's policy, Barreca's attorney sent Blue Cross a letter stating that the matter had settled and that Barreca was going to send Blue Cross its reimbursement less 1/3 for the attorney's fee.
Blue Cross rejected this, and Barreca filed a concursus proceeding.
Contrary to reimbursement which gives the insurer only the right to be repaid by the insured, subrogation gives the insurer the right to assert the actions and rights of the insured and places the insurer in the shoes of the insured. Barreca v. Cobb, supra.
... [U]nder the principles of subrogation, the insurer and the insured are co-owners of the right to recover the medical expenses paid by the insurer. As co-owners, both the insured and the insurer are responsible for the corresponding litigation expenses. However, we hold that, in subrogation cases, an important prerequisite to the assessment of attorney fees is timely notice to the insurer. Timely notice is necessary to allow the insurer to exercise its right to join the action, or bring its own action, and be represented by legal counsel of its own choosing if it so elects. Assessment of attorney fees is justified only when the insurer chooses to rely on the efforts of plaintiff's counsel.
Barreca v. Cobb, 668 So.2d at pp. 1131-1132. Because it was undisputed that Blue Cross was notified of Barreca's action and chose to take no action, Blue Cross was ordered to bear its proportionate share of the legal fee.
In this matter, State Farm's right of subrogation to recover medical payments was undisputed. However, the Masterses denied State Farm's contention that the insurer actively pursued the subrogation claim through its in-house personnel. Plaintiffs contended that State Farm did not have sufficient employees and did too little to pursue its subrogation claim. This record belies plaintiffs' argument.
*670 State Farm supported its motion for summary judgment with the affidavit of Griff Williams, a subrogation consultant in State Farm's home office Corporate Subrogation Unit. Williams averred that State Farm, along with Progressive Insurance Company, were participating members of the Automobile Subrogation Arbitration Agreement and Medical Payment Subrogation Arbitration Agreement in 1999 and 2000. The agreements provided that participating members must arbitrate disputes regarding medical payments that do not exceed $100,000. Williams also stated that State Farm arbitrated medical payment subrogation claims with other participating members, including Progressive, using State Farm in-house staff.
The record also contained the depositions of Jeffrey Ray, the State Farm subrogation expediter who handled this matter, along with the depositions of Dean LeBlanc and Al Joshua, the co-supervisors of the Monroe subrogation unit at which Ray was employed. In addition, State Farm supplied its log on the plaintiffs' claim, plaintiffs' responses to State Farm's discovery requests and various correspondence pertaining to this dispute.
Following the December 27, 1999, accident and after plaintiffs informed State Farm that they intended to pursue damages from the tortfeasor, State Farm responded with a December 30, 1999, letter to plaintiffs asking the Masterses to contact State Farm for any desired assistance. The State Farm log indicates that during January, the company investigated the accident. On January 28, 2000, Janet Sanders, State Farm Senior Claims Representative, wrote Jennifer Minner of Progressive Insurance, stating Progressive's insured was responsible for the accident, notifying Progressive of State Farm's subrogation rights, and asking that Progressive communicate with State Farm. State Farm ultimately made medical payments to plaintiffs exceeding $2,600.
On May 12, 2000, Sanders sent the file to State Farm's subrogation unit. On June 2, 2000, Ray sent Progressive another letter giving Progressive notice of State Farm's subrogation claim and asking Progressive to communicate and send its check to State Farm. The log also reflects that on June 16, 2000, Paul Kyle with Progressive informed Ray that Progressive had State Farm's "med pay lien noted in their file and they would consider it at the time of settlement." Paul also reported that Progressive was waiting for wage information from the plaintiffs' attorney in order to settle. On June 22, Diane Masters informed State Farm they had an attorney. On August 17, Ray requested that Progressive provide a status report on the dispute.
On September 8, 2000, Mr. Hennessy, plaintiffs' attorney, phoned Ray and sought to have State Farm reduce its medical payments recovery by a third. After Ray determined that there was no policy limits problem with the recovery, Ray informed plaintiffs' attorney that State Farm was entitled to 100% of the medical payments recovery. On September 12, Mr. Hennessy wrote Ray, again demanding that State Farm pay its share of the attorney's fees related to its subrogation claim.
Dean LeBlanc, Ray's immediate supervisor, stated in his deposition that normally, the only circumstance in which State Farm would retain an attorney to recover medical payments was if the matter was close to prescribing, a settlement had not been reached, and the other insurer was not a member of the Medical Payment Subrogation Arbitration Agreement. If the insurer was a member of the arbitration agreement, State Farm was required to use arbitration, which cost the company a filing *671 fee of $40.[2] If the matter had prescribed, State Farm would consider going to plaintiffs' attorney, requesting that State Farm's interests be protected. LeBlanc also explained that State Farm had an internal tickler system to alert personnel two months prior to prescription so a subrogation arbitration claim could be filed.
In his deposition, Joshua, LeBlanc's co-supervisor, stated that State Farm would consider relinquishing a third of the medical payments recovery, if that was necessary to make its insured whole, or if State Farm had let the claim prescribe. Generally, when the insurers both were members of the subrogation arbitration agreement, State Farm used arbitration and would not reduce its medical payments recovery. Although Joshua declined to give a percentage, he estimated a large majority of major companies were members of the arbitration agreement.
Ray, a State Farm expediter who handled clear-cut liability matters for the subrogation department, reviewed in his deposition the sequence of acts performed by State Farm (detailed above) to pursue the subrogation claim against Progressive. State Farm communicated with Progressive and did not seek assistance from Mr. Hennessy, with whom State Farm had no contact until a September 8, 2000, phone call. In June 2000, when Mrs. Masters informed State Farm they had an attorney, State Farm had already taken steps to independently recover the medical payments directly from Progressive.
The plaintiffs correctly urged that insurers generally, via subrogation, are co-owners with their insureds of the right to recover medical expenses and that "both the insured and the insurer are responsible for the corresponding litigation expenses." Barreca v. Cobb, 668 So.2d at p. 1132. However, the Masterses and their attorney did not meet the very specific prerequisite set out in Barreca, supra; i.e., timely notice so that the insurer has the opportunity to decide whether to exercise its right to join the action or to bring its own action, represented by legal counsel of its own choosing. The insurer must have the opportunity to choose to rely on the efforts of plaintiff's counsel before the insurer can be held responsible for the attorney's fees of plaintiffs' attorney. In this case, State Farm communicated its subrogation claim directly to Progressive shortly after the accident. Neither plaintiffs nor their attorney, whom they retained in January 2000, communicated with State Farm to provide the insurer the required notice and opportunity to decide if State Farm wanted to avail itself of Mr. Hennessy's services. In fact, the attorney did not give any notice until he informed State Farm the matter had settled. Because the plaintiffs and their attorney did not comply with the prerequisite of timely notice set out in Barreca, supra, other arguments raised on appeal are pretermitted.
Our de novo review of the pleadings, depositions, answers to interrogatories, admissions on file and the affidavits reveal the facts and sequence of events are basically undisputed. The Masterses and State Farm disagree on the interpretation of those facts. In concluding there are no genuine issues of material fact concerning the notice in this case and in finding here that State Farm was entitled to summary judgment as a matter of law, we are limiting this result strictly to the facts in this particular case. Since each case must be decided on its own unique facts and circumstances, we make no ruling as to what constitutes "timely notice" under Barreca, supra, in general. Our review of this record *672 revealed that "timely notice" did not occur in this dispute.

DECREE
After a thorough review of the record and the arguments, we find that the trial court did not err in granting summary judgment in favor of State Farm Insurance Company and against Mr. and Mrs. Masters. For the reasons set out above, the judgment of the trial court granting the summary judgment and dismissing the plaintiffs' action with prejudice is affirmed. Costs are assessed against the plaintiffs.
AFFIRMED.
APPLICATION FOR REHEARING
Before WILLIAMS, GASKINS,
KOSTELKA, DREW, and HARRISON, JJ.
Rehearing denied.
NOTES
[1] The plaintiffs also brought this as a class action on behalf of similarly situated persons. Although the record contains a motion for class certification, there is no indication that the class was ever certified. Further, on appeal, the plaintiffs state the question of class certification is not before this court.
[2] In his deposition, Joshua stated the arbitration fee was $45.